UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

WESTERN BULK CARRIERS K/S,                     :

                Plaintiff,                     :

                              :

- against -                                                      :

                              :      ECF CASE

PANCOAST TRADING S.A.,                            :

                Defendant.                  :
----------------------------------------------------------X

SEP 1 7 2007

U.S.D.C. S.D.N.Y.
CASHIERS
07 CV 7929 (WHP)

## AMENDED VERIFIED COMPLAINT

Plaintiff, WESTERN BULK CARRIERS K/S, ("Plaintiff") by and through its attorneys,

Lennon, Murphy & Lennon, LLC, as and for its Amended Verified Complaint against the Defendant,

PANCOAST TRADING S.A., ("Defendant"), alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.      At all times material to this action, Plaintiff was, and still is, a foreign

company duly organized and operating under foreign law with a principal place of business in Oslo,

Norway.

3.      Upon information and belief, Defendant was, and still is, a foreign company, organized

and existing under the foreign law of Liberia.

4.      At all material times Plaintiff was the disponent owner of the ocean going motor vessel

"VERTIGO" (hereinafter "the Vessel").

5.      Pursuant to a charter party dated June 28, 2006, Plaintiff chartered the Vessel, a bulk

carrier, to Defendant for a time charter period of minimum 10 October 2006/ maximum 10 December

2006 via safe ports/ safe berths/ safe anchorages always afloat for the carriage of any permissible cargo

in consideration for hire payments of $15,000 per day pro rata including overtime plus $150,000 gross ballast bonus. By Addendum dated October 13, 2006, the charter party was extended to July 1, 2007 with a hire rate of $16,250 per day. *See Charter Party with Addendum attached as Exhibit 1.*

6.      Clause 32 of the charter party provided, in relevant part, that any amounts withheld by Defendant due to off-hire must be properly substantiated.

7.      In respect of the charter party, certain disputes arose between Plaintiff and Defendant relating to the Defendant's illegal act of failing to pay the full amount of hire due and owing to Plaintiff. Specifically, Defendant wrongfully made deductions from earned hire that was neither substantiated nor permitted under the charter party.

8.      Despite due demand, Defendant has failed and/or refused to pay Plaintiff the principal sum of $349,212.93, which represents the balance of hire due Plaintiff.

9.      As a result of Defendant's breach of the charter party in failing to pay hire for its use of the Vessel, Plaintiff has sustained damages in the total principal amount of $349,212.93, exclusive of interest, attorneys' fees, and arbitration costs.

10.     Pursuant to the charter party contract, all disputes between the parties are to be submitted to arbitration in the City of London with English Law to apply. Plaintiff will commence arbitration shortly.

11.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration. As best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

| A. | Outstanding hire: | $349,212.93 |
|----|----|----|
| B. | Interest for 3 years at 6.5% compounded quarterly: | $74,524.69 |
| C. | Attorneys' fees: | $61,112.00 |

2

|  | D. | Arbitrators' fees and arbitration costs: | $26,191.00 |

**Total**                                                                    **$511,040.62**

12.    The Defendant cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of

Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of

this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of

one or more garnishees which are believed to be due and owing to the Defendant.

13.    The Plaintiff seeks an order directing the Clerk of Court to issue Process of Maritime

Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and

Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8,

attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the

purpose of obtaining personal jurisdiction over the Defendant, to compel arbitration (if necessary) and

to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and

answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance

with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*

C.    That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and

Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and

Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8,

3

attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$511,040.62** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F. That this Court award Plaintiff its attorneys' fees and costs of this action; and

G. That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: September 14, 2007
New York, NY

The Plaintiff,
WESTERN BULK CARRIERS K/S,

By: _____

Charles E. Murphy (CM 2125)
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
cem@lenmur.com

4

## ATTORNEY'S VERIFICATION

State of Connecticut )
               )    ss.:    Southport
County of Fairfield )

1.    My name is Charles E. Murphy.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.    I have read the foregoing Amended Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information and

belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within

this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents and/or

representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      September 14, 2007
              Southport, CT

                                  Charles E. Murphy

ORIGINAL

# Time Charter

GOVERNMENT FORM

*Approved by the New York Produce Exchange*

November 6th, 1913 – Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1   **This Charter Party**, made and concluded in *London* ........................................ 28th day of *June* ................... ~~1920~~06
2   Between *WESTERN BULK CARRIERS K/S, OLSO, NORWAY* Disponent ........................................
3   Owners of the good *Jamaican flag* ......... Steamship/Motorship *"VERTIGO"* ........................................ of *See Clause 29*
4   of ........................................ tons gross register, and ........................................ tons net register, having engines of ........................ indicated horse power
5   and with hull, machinery and equipment in a thoroughly efficient state, and classed ........................................
6   at ........................ of about ........................ cubic feet bale capacity, and about ........................ tons of 2240 lbs.
7   deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,
8   allowance a minimum of fifty tons) on a draft of ........................ feet ........................ inches on ........................ Summer freeboard, inclusive of permanent bunkers,
9   which are of the capacity of about ........................ tons of fuel, and capable of steaming, fully laden, under good weather
10  conditions about ........................ knots on a consumption of about ........................ tons of best Welsh coal—best grade fuel oil—best grade Diesel oil,
11  now *ETC Pecem 29th June 2006* ........................................
12  ........................................ and *PANCOAST TRADING S.A.* ........................................ Charterers of the City of Liberia ........................................

13  **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14  ~~about~~ *See Clause 83* ........................................
15  ........................................ within below mentioned trading limits.
16  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17  the fulfillment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations*
    *hereunder.*
18  Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot Pecem any time, day and night, Sundays and*
19  *holidays included.* ........................................
20  in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as
21  the Charterers may direct. ~~If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on her delivery *arrival first load*
22  *port* to be
    ready to receive *any permissible* cargo *under this Charter Party* with clean-swept holds and tight, staunch, strong and in every way fitted for the service,
    having water ballast, winches and
23  donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same
24  time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-
25  dise, including petroleum or its products, in proper containers, excluding *See Clause 55* ........................................
26  (vessel is not to be employed in the carriage of Live Stock, ~~but Charterers are to have the privilege of shipping a small number on deck at their risk~~
27  ~~all necessary fittings and other requirements to be for account of Charterers),~~ in such lawful trades, between safe port and/or ports in British North
28  America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29  Mexico, and/or South America *via safe berth(s), safe anchorage(s), always afloat, except NAABSA allowed in Plate, South Brazil*
    *(upto Santos) and Buenaventura where customary, always within Institute Warranty limits – See also Clause 52 and 54* ~~and/or~~
    ~~Europe~~
30  ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~
31  ~~October 31st and May 15th, Hudson Bay and all months parts; also excluding, when out of season, White Sea, Black Sea and the Baltic,~~
32  ........................................
33  ........................................
34  ........................................
35  as the Charterers or their Agents shall direct, on the following conditions:
36  1.   That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; *and all other charges*
    *relating to the Master, Officers and crew* and pay for the
37  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water *also for garbage removal unless*
    *compulsory in which case same for Charterers' account, lubricating oil* and maintain her class and keep
38  the vessel in a thoroughly efficient state in hull, *cargo spaces,* machinery and equipment *with all inspection certificates necessary to comply with*
    *current requirements at ports of call* for and during the service.
39  2.   That the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, *compulsory* Pilotages, Agencies, Commissions,
40  Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into
41  a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42  illness of the crew to be for Owners account. Fumigations ordered because of cargos carried, or ports visited while vessel is employed under this
43  charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period
44  of six months or more.
45  Charterers are to provide necessary dunnage and stuffing boards, also any extra fittings requisite for a special trade or unusual cargo, but
46  Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47  for dunnage, they making good any damage thereto.
48  3.   ~~That the the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~
49  ~~board the vessel at the current prices in the respective ports; the vessel to be delivered with not less than~~ ........................ tons and not more than

CENTURY CHARTERING (UK) LTD

50 ............................ tons and to be re-delivered with not less than ............................ tons and not more than ............................ tons. *See Clause 42.*

51     4.  That the Charterers shall pay for the use and hire of the said Vessel at the rate of *See Clause 38* ............................

52 ............................ United States Currency *daily* per ton on vessel's total deadweight carrying capacity, including bunkers and

53 stores, on ............................ summer freeboard, per Calender Month, commencing on and from the *day and time* of her delivery, as aforesaid, and at

54 and after the same rate for any part of a *day* namely, hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55 wear and tear excepted, to the Owners (unless lost) at *See Clause 56.*

56 ............................ unless otherwise mutually agreed. Charterers are to give Owners not less than ............................ days

57 notice of vessels expected date of re-delivery, and probable port *See Clause 56.*

58     5.  *See Clause 30* Payment of said hire to be made in New York in cash in United States Currency, *every 15 days* semi-monthly in advance, and for

the last half-month *15 days* or

59 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61 hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count *as from vessel's delivery* 7 a.m. on the working

day

63 following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m. but if required by Charterers, they

64 to have the privilege of using vessel at once, such time used to count as hire.

65     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68     6.  That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe anchorage or safe* place that Charterers or

their Agents may

69 direct, provided the vessel can safely lie always afloat at any time of tide, except at such places *in the River Plate, South Brazil upto Santos and*

70 *Buenaventura* where it is customary for similar size vessels to safely lie aground.

71     7.  That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. *No passengers allowed.* Charterers have the privilege of passengers as far as accommodation allow,

74 paying Owners ............................ per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are

75 incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.

76     8.  That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78 agency; and Charterers are to load, stow, *discharge, dunnage, tally, secure, unsecure, lash, unlash* and trim the cargo at their expense under the

supervision of the Captain, who is to sign *or is to authorise Charterers in writing to sign* Bills of Lading for

79 cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

80     9.  That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82     10.  That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84 rate of *$10.00* per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85 Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling *as per Clause 72.*

86     11.  That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87 Captain shall keep a full and correct Log *in English* of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88 terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89 sumption of fuel.

90     12.  That the Captain shall use diligence in caring for the ventilation of the cargo. *Vessel has natural ventilation only.*

91     13.  That the Charterers shall have the option of continuing this charter for a further period of ............................

92 ............................

93 on giving written notice thereof to the Owners or their Agents ............................ days previous to the expiration of the first named term, or any declared option.

94     14.  That if required by Charterers, time not to commence before *00:01 hours 29th June 2006* ............................ and should vessel

95 not have given written notice of readiness on or before *4th July 2006* ............................ but not later than 4 p.m. *It is understood that Owners will keep Charterers*

*closely advised from time of fixture to delivery of vessel's schedule.* Charterers or

96 their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97     15.  That in the event of the loss of time from deficiency, *sickness, crew/officers, strike, accident or default of Master, Officers or crew,*

or men or *deficiency of* stores, fire, breakdown or damages to hull, machinery or equipment,

98 grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99 preventing the full *use* working of the vessel, *to the Charterers,* the payment of hire shall cease for the time thereby lost; *and all extra expenses*

*directly involved including bunkers consumed during period of suspended hire shall be for Owners' account;* and if upon the voyage

the speed be reduced by

100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101 thereof, and all extra *directly related* expenses shall be deducted from the hire.

102     16.  That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105     The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106 purpose of saving life and property.

107     17.  *LMAA Clause* That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New

CENTURY CHARTERING (UK) LTD

~~York,~~
108 ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for~~
109 ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~

110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights *hire and sub-hire* for any amounts due under this Charter, including General Aver-
111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113 might have priority over the title and interest of the owners in the vessel.

114 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115 Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules ~~1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
116 York-Antwerp Rules *1974 and subsequent amendments in London 1924,* ~~at such port or place in the United States as may be selected by the carrier,~~
and as to matters not provided for by these

117 Rules, according to the laws and usages at the port of *London* ~~New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
118 ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119 ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120 ~~bond and such additional security as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
121 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125 ~~United States money.~~

125 ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
128 ~~whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
129 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and to the same manner as if such salving ship or~~
131 ~~ship belonged to strangers.~~ *Charter hire not to contribute to General Average.*
132 Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133 20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the
134 cost of replacing same, to be allowed by Owners.

135 21. That the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a
136 convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from
137 time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.

138
139
140 22. ~~Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons, also~~
141 ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142 ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel *power and electric light as on*~~
*board sufficient for night work in all holds simultaneously free of expense to the Charterers (See Clause 39)* ~~lanterns and oil for~~
143 ~~night work, and vessel to give use of electric light when so fixed, but any additional lights over those on board to be at Charterers' expense. The~~
144 ~~Charterers to have the use of any gear on board the vessel.~~

145 23. Vessel to work night and day, if required by Charterers, and all *cranes* ~~winches~~ to be at Charterers' disposal during loading and discharging;
146 ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~
147 ~~deck hands and donkeyman for overtime work done in connection with the working hours and rates stated in the ship's articles. If the rules of the~~
148 ~~port, or labor unions, prevent crew from driving winches, shore~~ *cranemen* ~~Winchmen~~ *to be employed and* to be paid by Charterers. In the event of a
149 ~~disabled winch or winches, or~~
~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
150 ~~thereby.~~

151 24. ~~It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exceptions from liability contained~~
152 ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels~~
153 ~~etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both~~
154 ~~of which are to be included in all bills of lading issued hereunder.~~

U.S.A. Clause Paramount

155 ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~
156 ~~15, 1926, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
157 ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
158 ~~be repugnant to said Act in any extent, such term shall be void to that extent, but no further.~~

Both to Blame Collision Clause

159 ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
161 ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
162 ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~
163 ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
164 ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~
166 ~~owners as part of their claim against the carrying ship or carrier.~~

167 25. That vessel shall not be required *force ice or follow ice breakers* to enter any ice-bound port, or any port where lights or light-ships have been or
are about to be with-
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169 port or to get out after having completed loading or discharging.

170 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, *acts of pilots and tugboats* insurance, crew, and all other matters, same as when trading for their own account.

172 27. A commission of ~~2 1/2~~ *1.25* per cent is payable by the Vessel and Owners to *Century Chartering (UK) Ltd*
173
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

CENTURY CHARTERING (UK) LTD

175    28.  An address commission of a 1/2 *3.75* per cent payable to *Charterers* ............................................ on the hire earned and paid under this Charter.

*Clauses 29 to 103 included as attached to be part of this Charter Party.*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

CENTURY CHARTERING (UK) LTD

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

**Clause 29 – Vessel's Description**
DWT 26,666 MT ON 9,85 M SW DRAFT
SDBULK/LOG CARRIER BLT '86 JAPAN - JAMAICA FLAG
LOA/BEAM/DEPTH: 164.2 / 26.01 / 13.62 M
GRT/NRT: 15,502 / 9,247
CLASS: LLOYDS 100A1 BULK CARRIER, ESP LMC
4 HO/HA - HACOVERS: FOLDING, HYDRAULICALLY OPER.
GRAIN/BALE: 1,198,115 / 1,148,940 CBFT
CRANES: 4 X 30.5 MT SWL EACH
LOGS FITTED / SUITABLE FOR GRAB DISCHARGE /
CO 2 FITTED IN CARGO HOLDS / AUSTRALIAN HOLD LADDERS

CARGO HOLDS CAPACITY IN CUB/MTRS

| HOLD NO | GRAIN | BALE |
|---------|-------|------|
| NO:1 | 7,133 | 6,813 |
| NO:2 | 9,323 | 8,924 |
| NO:3 | 9,316 | 8,933 |
| NO:4 | 8,154 | 7,864 |
| TOTAL | 33,926 | 32,534 |

HATCHES DIMENSIONS (INSIDE HATCH COAMING)

| NO:1 | L x W | : 18,40 X 12,80 M |
|------|-------|-------------------|
| NO:2 | | : 25,60 X 12,80 |
| NO:3 | | : 25,60 X 12,80 |
| NO:4 | | : 21,60 X 12,80 |

m/v VERTIGO - WARRANTED CONSUMPTIONS

IFO/MDO SPECIFICATIONS AS PER BUNKER CLAUSE.

SPEED AND CONSUMPTION ON LADEN AND BALLASTED CONDITION, IFO 180
CST
LADEN - Abt 13 knots on abt 20 mt/d or abt 12.5 knots on abt 19 mt/d
BALLAST - Abt 13 knots on abt 19 mt/d or abt 12.5 knots on abt 18 mt/d
-All above in good weather conditions, wind force not exceeding Beaufort
scale 4 and sea condition not exceeding Douglas state 3
-vessel burns mdo in main engine when navigating in narrow or restricted
waters, with or without pilots, at Master's/Chief Engineer's discretion

CONSUMPTION IN PORT WHEN IDLE AND WORKING, MDO
IDLE : abt 1.2 mt/d
WORKING 8 HRS: abt 2.0 mt/d
WORKING 16 HRS: abt 2.8 mt/d
WORKING 24 HRS: abt 3.5 mt/d

Owners confirm vessel does not burn mdo at sea

MASTER ADVISES QTY OF UNPUMPABLE BUNKERS IS 80-100 CBM

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

FURTHER DESCRIPTION AS PER PANCOAST QUESTIONAIRE AS PROVIDED

Following questionnaire is completed only by designated person with knowledge of the particulars of the vessel under negotiation. Charterers' questionnaire will not be amended and/or deleted in any way and if there is any information that owners/managers are not sure about their accuracy or validity, such will be clearly stated.

1. NAME /CALL SIGN: MV Vertigo / 6YRD5

2. FLAG/PORT OF REGISTRY: JAMAICA / MONTEGO BAY

3. BUILT (MONTH / YEAR): 05/1986

4. EX NAMES: PACQUEEN

5.
A) PLS ADVISE VSL'S CONTACT NBRS
TLX: 433 999 919
FAX: 763 579 224
TEL: 763 579 222/3
EMAIL: Vertigo@gtships.com

B) IF VSL HAS ONLY TLX ONBOARD OWNERS GUARANTEE THAT IN COUNTRIES WITH NO TLX SERVICE (E.G. JORDAN), COMMUNICATION BETWEEN VSL AND SHORE WILL BE HANDLED BY OWNERS:

VESSEL IS ALSO EQUIPPED WITH E-MAIL AND MINI-M

6. CLASSIFICATION: Rina No.: 83478

7. OFFICIAL NUMBER AND LLOYDS REGISTER NUMBER: JMR 05003

8. PLS ADVISE FOLL:

|  | D.W.A.T. (in Mts) | DRAFT (in mtrs) | T.P.I (in Mts) | T.P.C. (in Mts) |
|---|---|---|---|---|
| SUMMER | 26.666 | 9.854 |  | 36.50 |
| WINTER | 25.919 | 9.649 |  | 36.30 |
| TROPICAL | 27.413 | 10.059 |  | 35.48 |
| FW | 26.666 | 10.075 |  |  |

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28ᵀᴴ JUNE 2006

9. LIST DEADWEIGHT ON THE FOLLOWING DRAFTS BASIS SW (1025) /
BW (1013) / FW (1000), AS APPLICABLE:

|  | SW |  |
|---|---|---|
| - 28' & 28'6" FT | 22,000 | 22,500 |
| - 29' & 29'6" FT | 23,000 | 23,600 |
| - 30' & 30'6" FT | 24,100 | 24,800 |
| - 31' & 31'6" FT | 25,200 | 25,750 |
| - 32' & 32'6" FT | 26,300 | 26,900 |

10. LOA (Length over All): 164.23

11. LBP (Length between Perpediculars): 154.60

12. BREADTH MOULDED & DEPTH MOULDED: 26.00 / 13.60

13. GRT/NRT (INTERNATIONAL / SUEZ / PANAMA) AND LIGHTSHIP
WEIGHT:
GRT/NRT: 15.500/9.251
PANAMA GROSS/NET: 16.710/13.139
SUEZ GROSS/NET: 16.048/14.337

OWNERS CONFIRM VSL IS & WILL REMAIN FULLY FITTED FOR TRANSIT
OF SUEZ, PANAMA AND ST. LAWRENCE SEAWAY: SEE ITEM 30

14.
A) CONSTANTS (EXCLUDING FRESH WATER): 300
B) FRESH WATER CAPACITY: 341.50 CBM
C) DAILY FRESH WATER CONSUMPTION: 8 MT/DAY
D) OWNERS CONFIRM THAT VSL HAS A FULLY OPERATIONAL
EVAPORATOR AND WILL REMAIN SO THROUGH OUT THE DURATION OF
THE C/P WITH PRODUCTIVITY (MTS/DAILY): 10MT/DAY AT SEA - YES

15.
A) PERMANENT BUNKER CAPACITY BASIS 100 PCT: 1141.75 CBM
B1) ACTUAL BUNKER CAPACITY (PERCENTAGE REF ABV): 1141.75 CBM
B2) NUMBER OF TANKS FOR IFO & MDO (STATE SEPARATELY) AND
CAPACITY (BASIS 100 PCT) OF EACH TANK:

NO.1 FOT (C): 493.73
NO.2 FOT (C): 493.73
NO.3 FOT (P): 154.29

DOT (S): 138.75

C) UNPUMPABLE BUNKER QUANTITY: 100 CBM
D) CAPACITY OF BALLAST TANKS: 7958.04 CBM
E) OWNERS CONFIRM VESSEL CAN BE TOTALY DEBALLASTED: YES
F) OWENRS CONFIRM VESSEL DOES NOT HAVE A BALLAST HOLD: YES

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

### CHARTER PARTY DATED 28TH JUNE 2006

G) OWNERS CONFIRM THAT TANKS MARKED IFO AND MDO IN CAPACITY PLAN ARE STILL ALL USED FOR IFO/MDO RESPECTIVELY AND THAT NO ADDITIONAL TANK IS BEING MODIFIED OR USED FOR STORYING, MOVING OR TRANSPORTING BUNKERS DURING OR AFTER BUNKERING OPERATIONS: YES

16. DISTANCE KEEL TO HATCH COAMINGS: 15.60

17. DISTANCE KEEL TO HIGHEST POINT: 44.00

18. AIR DRAFT IN BALLAST AND HEAVY BALLAST CONDITION: 38 M (IN BALLAST

    HEAVY BALLAST: N/A

19. DISTANCE FROM WATER LINE TO HATCH COAMING: 10.30 M (MIDDLE OF NO. 3 HATCH COAMING)

20. DISTANCE FROM SHELL PLATING TO HATCH OPENING: 6.60 M

21.
A) NUMBER OF HOLDS AND HATCHES: 4/4

B) HATCH DIMENSIONS:

| HATCH | LENGTH | WIDTH |
|-------|--------|-------|
| no.1 | 18.40 | 12.80 |
| no.2-3 | 25.60 | 12.80 |
| no.4 | 21.60 | 12.80 |

C) HATCH COVER TYPE:
McGregor-Fore and aft folding, steel hydraulically operated, boxed type

D) LOCATION / SIZE OF CARGO LOADING HOLES, WHICH ARE CONFIRMED OPERATIONAL: N/A

E) DISTANCE FROM FRONT OF FORWARD HATCH COAMING TO AFT OF LAST HATCH COAMING: 113 M

F) TANKTOP STRENGTH: 11.03

G) OWNERS CONFIRM VESSEL HAS TOPSIDE WINGTANKS ALL HOLDS: YES

H) OWNERS CONFIRM ALL WING TANKS ARE BALLAST TANKS: YES

I) OWNERS CONFIRM NO CARGOBATTENS/SIDE SPARRINGS IN HOLDS: YES

### ADDITIONAL CLAUSES TO M.V. "VERTIGO"

### CHARTER PARTY DATED 28TH JUNE 2006

J) OWNERS CONFIRM TANKTOP IS STEEL, STRENGTHENED AND SUITABLE FOR GRAB DISCHARGE: YES

K) OWNERS GUARANTEE THAT VESSEL HAS SUFFICIENT STABILITY AND SAFE TRIM WHEN TRADING HOMOGENEOUSLY LOADED TO FULL CUBIC AND DEADWEIGHT CAPACITY: YES

L) OWNERS CONFIRM HOLDS ARE HOPPERED: YES

M) OWNERS CONFIRM VSL HAS CLEAR UNOBSTRUCTED MAIN HOLDS: YES

N) OWNERS CONFIRM THAT VSL HAS NO CENTERLINE BULKHEAD AND/OR ANY OTHER OBSTRUCTIONS AND/OR ANY HORIZONTAL FRAME AND/OR BEAMS: YES

O) OWNERS CONFIRM THAT VESSEL HAS NO DEEP TANKS OR COMPARTMENTS THAT WERE ORIGINALLY CONSTRUCTED AS DEEP TANKS: YES

P) OWNERS CONFIRM THAT VSL HAS NO REEFER SPACE OR SPECIAL CARGO LOCKER SPACE: YES

Q) MAXIMUM PERMISSABLE LOAD ON DECKS + HATCHCOVERS: REVERTING

R) HOLD DIMENSIONS PER HOLD (L x B x H):

| HOLD NO. | LENGTH | WIDTH | HEIGHT |
|---|---|---|---|
| 1 | 29.60 | aft:26/fwd:11.20 | 13.60 |
| 2 | 32.00 | 26.00 | 13.60 |
| 3 | 32.00 | 26.00 | 13.60 |
| 4 | 30.40 | aft:15.80/fwd:26 | 13.60 |

T) TANK TOP FLAT FLOOR DIMENSIONS (EXCLUDING CORRUGATED BULKHEAD) (L x B):

| HOLD NO. | LENGTH | WIDTH |
|---|---|---|
| 1 | 28.41 | aft:26/fwd:11.20 |
| 2 | 30.00 | 26.00 |
| 3 | 30.00 | 26.00 |
| 4 | 29.40 | aft:15.80/fwd:26 |

22. ADVISE IF VSL HAS STERN AND/OR BOW THRUSTER: NO BOW THRUSTER

23. OWNERS CONFIRM CO2 FITTED IN CARGO HOLDS: Yes

24. OWNERS CONFIRM AUSTRALIAN HOLD LADDERS FITTED: Yes

ADDITIONAL CLAUSES TO M.V. "VERTIGO"

CHARTER PARTY DATED 28TH JUNE 2006

25. OWNERS TO ADVISE IF VSL HAS NATURAL OR ELECTRICAL
VENTILATION AND AIR CHANGES PER HOUR: Natural

26. GRAIN/BALE CAPACITIES HOLD BY HOLD (EXCLUDING BLEEDING
WINGTANKS) IN CUBIC FEET:

GRAIN / BALE

| | GRAIN / CBF | BALE/CBF |
|---|---|---|
| NO.1 | 251916.73 | 240600.74 |
| NO.2 | 329231.86 | 315136.23 |
| NO.3 | 329006.55 | 315467.13 |
| NO.4 | 287960.63 | 277735.88 |
| NO.5 | | |
| TOTAL: | 1 198 115.77 | 1 148 939.98 |

27. TYPE OF GEAR, SWL, NUMBER, WHERE SITUATED, OUTREACH:
4 electro-hydraulic single jib 30.5mt each

no.1 : 9 m / 30.5mt
no.2-4: 11m / 30.5mt

28.
A) OWNERS CONFIRM VSL IS GRAB FITTED & CONFIRMED SUCH GRABS
ARE OPERATIONAL: NO GRABS FITTED
B) NUMBER OF GRABS ONBOARD:
C) TYPE AND MAKER:
D) CONFIRM GRABS ARE NOT TOUCH BOTTOM OPENING TYPE:
E) MAXIMUM CUBIC AND WEIGHT CAPACITY:
F) PIECE WEIGHT:

29.
A) NATIONALITY OF CREW: Filipino (Officers: Romanian/Filipino)
B) MASTER'S NAME: MIRCEA CRISTIAN
C) CHIEF ENGINEERS NAME: STANCIU ILIE
D) OWNERS CONFIRM THAT MASTER/CH.ENG CAN SPEAK & WRITE
FLUENTLY THE ENGLISH LANGUAGE: YES

30.
OWNERS CONFIRM THE VESSEL IS FULLY FITTED FOR

A) PANAMA / SUEZ: YES
B) ST. LAWRENCE SEAWAY / GREAT LAKES: NO
AND WILL REMAIN FITTED THROUGH-OUT THE DURATION OF THE C/P.

ADDITIONAL CLAUSES TO M.V. "VERTIGO"

CHARTER PARTY DATED 28TH JUNE 2006

31.
A) OWNERS CONFIRM VESSEL FITTED FOR CARRIAGE OF GRAIN IN
ACCORDANCE WITH CHAPTER VI FOR SOLAS 1974 AND AMMENDMENTS,
WITHOUT REQUIRING BAGGING AND/OR STRAPPING AND/OR LASHING
AND/OR SECURING WHEN LOADING A FULL CARGO (DEADWEIGHT) OR
AGRIPRODS IN BULK (STOWAGE FACTOR 43-58 CBFT-100 % CUBIC
CAPACITY) WITH ENDS UN-TRIMMED (yes/no): YES

B) OWNERS CONFIRM THAT CUBIC CAPCITY OF EACH HOLD IS BASED
ON UNTRIMMED ENDS (yes/no): YES

C) OWNERS CONFIRM VESSSEL IS A SINGLE DECK SELFTRIMMING BC
AND WAS ORIGINALLY BUILT AS A SD SELF TRIMMING BC: YES

D) OWNERS CONFIRM VESSEL CAN LIFT A FULL CARGO OF STEEL /
STEEL PRODUCTS UP TO HER FULL DWAT CAPACITY: YES AND IN
ACCORDANCE WITH HER LOADING MANUAL

E) OWNERS CONFIRM VESSEL IS STRENGTHENED FOR THE CARRIAGE
OF HEAVY CARGOES AND SUITABLE FOR ALTERNATE HOLD LOADING
(without requiring any bagging and/or strapping and/or lashing) AND STATE ALL
COMBINATIONS OF HOLDS WHICH MAY BE LEFT EMPTY:

VESSEL IS NOT STRENGTHENED FOR HEAVY CARGOES NOR SUITABLE
FOR ALTERNATE HOLD LOADING

F) OWNERS CONFIRM VESSEL IS FULLY LOGS/TIMBER FITTED
INCLUDING ALL LOOSE LASHING MATERIALS, CHAINS, STANCHIONS
FOR THE CARRIAGE OF A FULL LOAD OF LOGS/TIMBER ON AND UNDER
DECK. PLEASE ADVISE

Vessel has been built/operated as a logs carrier until today with sufficient lashing
materials/chains/stanchions to satisfy her logs cargo requirements. Suggest charterers
to inspect same prior vessel's sailing and supply any additional materials for their own
trade. Cargo lashing manual is available on board for charterers review.

i) STANCHION TYPE AND HEIGHT
Fixed: ship side / 16pcs (p&s) H type
Collapsible: ship side / 54pcs (p&s)

ii) DECK CUBIC CAPACITY : REVERTING

G) VSL HAS A VALID APPENDIX B CERTIFICATE (WHICH PLS COPY):

32.
A) LAST DRYDOCK (WHEN÷WHERE) NEXT DD EXPIRY DATE:

May 2006 / Gryfia Shipyard, Szczecin – Poland / Next DD: 28 November 2008

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

### CHARTER PARTY DATED 28TH JUNE 2006

B) HULL+MACHINERY VALUE: 11.000.000 usd
C) OWNERS P+I CLUB: Skuld
D) LAST CLASS INSPECTION: 29/05/2006

33.
A) SPEED CONSUMPTION STEAMING (LADEN/BALLAST):
LADEN - Abt 13 knots on abt 20 mt/d or abt 12.5 knots on abt 19 mt/d
BALLAST - Abt 13 knots on abt 19 mt/d or abt 12.5 knots on abt 18 mt/d
-all above in good weather conditions, wind force not exceeding Beufort
scale 4 and sea condition not exceeding Douglas state 3
-vessel burns mdo in main engine when navigating in narrow or restricted waters,
with or without pilots, at Master's/Chief Engineer's discretion

B) PORT CONSUMPTION IDLE/WORKING:
IDLE : abt 1.2 mt/d mdo
WORKING 8 HRS: abt 2.0 mt/d mdo
WORKING 16 HRS: abt 2.8 mt/d mdo
WORKING 24 HRS: abt 3.5 mt/d mdo

C) ADVISE IF ECO SPEED (LADEN/BALLAST): AS STATED IN 33A

D) BUNKER GRADES
IFO 180 cst RME25
MDO DMA or DMB of max sulphur content 1.5%
all above to ISO 8217:1996 or latest amendments

34.
A) FULL DETAILS/CONTACT NBRS OF:
- OWNING COMPANY
VERTIGO MARITIME INC.
80 BROAD STREET MONROVIA, LIBERIA

- MANAGERS
PRIMAL SHIPMANAGEMENT INC
15 VOULIAGMENIS AVENUE
116 36 ATHENS
GREECE
TEL    : +30 210 9227777
FAX   : +30 210 9226600
EMAIL : primalsm@otenet.gr
Pic: Demitirs Seretis

- DISPONENT OWNERS (AS APPLICABLE) : N/A
B) ADVISE IF VESSEL IS DISPONENTLY OWNED OR TIME CHARTERED:
B) OWNERS BANKERS + ACCOUNT NO.:
C) FULL STYLE AND CONTACT NBRS OF AGENTS AT LAST PORT PRIOR
TO DELIVERY:

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

Williams Recife
Av. Eng. Antonio de Goes, 449
9th floor
51110-000
Recife
Brazil
Tel1 : 00558133279200
Fax1 : 00558134654555
Email: williams@williams.com.br

35. SINCE WHEN IS VSL UNDER PRESENT OWNERSHIP OR MANAGEMENT
(STATE PREVIOUS NAME OF OWNERS & MANAGERS): September 2003

36. OWNERS CONFIRM THAT VSL HAS NO HISTORY OF GROUNDINGS
AND/OR STRANDINGS AND/OR COLLISSIONS AND/OR GENERAL
AVERAGE, AND/OR POLLUTION INCIDENT AND/OR OTHER SERIOUS
ACCIDENTS IN THE LAST 12 MONTHS, OTHERWISE PLS ADVISE:
Vessel involved in a collision accident in December 2005 during passage in the Great
Belts.

All other previous history under present ownership/management has been incident
free.

Repairs for the collision damage suffered involved steel, accommodation and
machinery repairs. All are now complete and have been carried out to the full
satisfaction of the vessel's class and the machinery maker's representatives in
attendance. The vessel is being repaired to the highest standard and now is in perfect
condition.

The hull underwriters surveyors have also been in full attendance and in full
cooperation with the owner's representatives from the very outset until completion.

Prior vessel's sailing all accounts/commercial/claim issues will be
settled between owners/underwriters/shipyard.

37. LAST (5) VOYAGES/CARGOES/CHARTERERS (COMMENCING WITH
THE MOST RECENT ONE):

- STEELS    (ST. PETERSBURG - PECEM) / WBC
- STEELS    (ST. PETERSBURG - FREDERICIA) / SECAM
- STEEL SLABS (ST. PETERSBURG - NEWPORT) / SECAM
- BULK COAL  (VYSOTSK - BRISTOL) / SECAM
- BULK COAL  (VYSOTSK - NEWPORT) / SECAM

ADDITIONAL CLAUSES TO M.V. "VERTIGO"

CHARTER PARTY DATED 28ᵀᴴ JUNE 2006

38. OWNERS CONFIRM THAT VSL IS FULLY COVERED BY PANDI,
MEMBER OF THE INTERNATIONAL GROUP OF PANDI CLUBS, AND WILL
REMAIN SO THROUGH OUT THE DURATION OF THE TIME CHARTER.
YES

39. PLS COPY WITH FOLLOWING CERTIFICATES WHICH ARE VALID
WHICH OWNERS CONFIRM WILL REMAIN VALID DURING T/C PERIOD:

- SAFETY EQUIPMENT CERTIFICATE,
- SAFETY CONSTRUCTION CERTIFICATE,
- CLASSIFICATION CERTIFICATE,
- INTERNATIONAL LOADLINE CERTIFICATE,
- DERATING CERTIFICATE,
- OPA & COFR CERTIFICATE,
- SAFETY RADIO CERTIFICATE,
- SMC/DOC,
- PANDI CERTIFICATE,
- LOADLINE CERTIFICATE,
- PANAMA & SUEZ TONNAGE CERTIFICATE,
- ISPS CERTIFICATE,
- H&M INSURANCE LETTER CONFIRMATION,
- REGISTRY CERTIFICATE,
- IOPP CERTIFICATE

40. OWNERS CONFIRM LAST SS OR INTERMEDIATE SURVEY DATES AND
THAT VESSEL HAS NO OUTSTANDING CONDITIONS OF CLASS:

CC: SHAFT GENERATOR TEMPORARY OUT OF ORDER

41. OWNERS CONFIRM THAT DURING VSL'S CALL AT PORT (S) IN THE
U.S.A. (OVER THE LAST 12 MONTHS) NO DEFICIENCIES AND/OR NON-
CONFORMITIES WERE FOUND BY LOCAL AUTHORITIES AND/OR COAST
GUARD, OTHERWISE PLS ADVISE WHEN, WHERE AND NATURE OF SUCH
DEFICIENCIES AND/OR NON-CONFORMITIES:

VESSEL HAS NOT CALLED ANY USA PORT OVER THE LAST 12 MONTHS

42. OWNERS CONFIRM THAT DURING VSL'S CALL AT PORT (S) IN
AUSTRALIA (OVER THE LAST 12 MONTHS) NO DEFICIENCIES AND/OR
NON-CONFORMITIES WERE FOUND BY LOCAL AUTHORITIES AND/OR
COAST GUARD, OTHERWISE PLS ADVISE WHEN, WHERE AND NATURE
OF SUCH DEFICIENCIES AND/OR NON-CONFORMITIES:

VESSEL HAS NOT CALLED ANY AUSTRALIAN PORT OVER THE LAST 12
MONTHS

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

43. OWNERS CONFIRM THAT VSL HAS NOT BEEN DETAINED OR FOUND WITH DEFICIENCIES BY COAST GUARD OR OTHER PORT AUTHORITY IN REF TO SAFETY AND/OR ENVIROMENTAL ISSUES OVER THE LAST 12 MONTHS, OTHERWISE PLS ADVISE WHEN, WHERE AND NATURE OF SUCH DEFICIENCIES AND/OR NON-CONFORMITIES: YES

44. OWNERS CONFIRM VESSEL IS NOT BLACK LISTED BY ANY PORT AUTHORITY, COUNTRY OR ORGANISATION: YES
45. OWNERS CONFIRM THAT VSL HAS NOT BEEN LAID UP DURING THE LAST 12 MONTHS: YES

46. PLS ADVISE IF VSL HAS BEEN APPROVED BY "RIGHTSHIPS" AND IF YES PLS ADVISE RATING VSL ACHIEVED: NO

### Clause 30 – Hire Payment
Hire to be paid to:

| | |
|---|---|
| Bank: | Nordea Bank Norge ASA |
| | PO Box 1166 Sentrum |
| | 0107 Oslo, Norway |
| Swift: | NDEANOKK |
| IBAN NO: | NO98 6006 04 43532 |
| Favour of: | Western Bulk Carriers KS, Olso, Norway |

### Clause 31 – On/Off Hire Clause
Referring to lines 60 and 61, where there is any failure to make "punctual and regular payment" due to oversight or negligence or error or omission of Charterers' employees, bankers or agents, Charterers will have two banking days to rectify the failure. Where so rectified the payment shall stand as punctual and regular payment.

### Clause 32
Charterers have the right to withhold from last hire payment estimated amount of redelivery bunkers as well as any amounts due to off hire which will be properly substantiated. Final accounting to be arranged by Charterers as promptly as possible but not later than 60 calendar days after redelivery.

### Clause 33
In the event of the vessel being boycotted by ITF, delayed or rendered inoperative by strikes, labour stoppages, or by any other difficulties due to vessel's flag, ownership, crew, terms of employment of Officers or crew, or any other vessel under the same ownership, all time lost is to be considered as off hire and expenses directly incurred thereby to be for Owners' account.

### Clause 34
Should the vessel be seized by any authority or arrested at the suit of any party having or purporting to have a claim against or any interest in the vessel, hire shall not be payable in respect of any period during which the vessel is not fully at Charterers' use and all extra directly related expenses incurred by Charterers during off hire period which is proved by Charterers shall be for Owners' account unless such seizure or arrest is occasioned by any personal act or omission or default of the Charterers or their agents, or by reason of cargo carried.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28ᵀᴴ JUNE 2006

### Clause 35
Any delay, expense and/or fines incurred on account of smuggling to be for Charterers' account if caused by Charterers or by Charterers' servants; and to be for Owners' account if caused by Master, Officers or Owners' servants.

### Clause 36
Deleted.

### Clause 37
Any time lost due to lack of proper documentation or equipment as per Clause 45, 46, 47 or any breach of said clauses shall be treated as off hire and all directly related expenses incurred resulting from such failure to be for Owners' account by reason of non-compliance with such regulations.

### Clause 38 – Hire
Hire: USD15,000 per day pro rata including overtime payable 15 days in advance plus US$150,000 gross ballast bonus.

First hire ballast bonus and value of bunkers on delivery to be paid within 2 working/banking days after vessel's delivery.

### Clause 39
If stevedores, longshoremen or other workmen are not permitted to work due to failure of the Owners to comply with Clause 46, or because of lack of said certificate, any time so lost shall be treated as off hire, and all directly related extra expenses incurred resulting from such failure shall be for Owners' account, but limited to one shift only.

### Clause 40
Should the vessel deviate or put back during a voyage, contrary to the orders or directions of the Charterers or as permitted by this charter, the hire is to be suspended from the time of her deviating or putting back until she is again in the same or equidistant position from the destination and the voyage resumed therefrom. All fuel used by the vessel while off hire shall be for Owners' account.

### Clause 41
In addition to Master rendering all usual and customary services with ship's crew and boats, not limited to the following services, are included in hire and shall be rendered by Officers and crew any time day or night without Charterers paying for such services provided feasible and practicable; provided that local regulations permit.

A.  Raising and lowering of cranes and/or gangways in preparation for loading and discharging.

B.  Opening and closing of hatches in connection with loading and discharging, if port regulations permit.

C.  Closing and opening of hatches in the event of adverse weather conditions which may affect the condition of cargo carried on board during loading and discharging, if port regulations permit.

D.  Arranging for and preparing stowing/rigging/unrigging of cargo equipment.

E.  Supervision for loading and discharging.

F.  Maintaining sufficient electric power on all cranes whilst loading and discharging.

G.  Shifting vessel during loading and discharging and shifting berths, however linesmen/pilotages/tugs, if any, to be for Charterers' account.

H.  Docking and undocking in connection with loading/discharging cargo or bunkering.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28ᵀᴴ JUNE 2006

I.    Bunkering

J.    Officers and crew to prepare and make ready vessel's hatches and cranes as much as possible prior to arrival at loading and/or discharging places so as to permit immediate commencement of loading and/or discharging operations, if weather permits.

### Clause 42

Bunkers on delivery abt 447 mt ifo and abt 70 mt mdo. Bunkers on redelivery about same quantities as on delivery.

US$ 340 pmt ifo and US$ 670 pmt mdo. Charterers to pay bunkers value on delivery together with 1st hire payment. Owners option to bunker vessel for their own account prior redelivery provided same does not interfere with Charterers cargo/trading operations.

### Clause 43

Charterers to have the privilege always subject to current timecharterers' approval to bunker vessel prior to delivery provided the bunkers does not interfere with Owners' operations and vessel to be on hire for that time. Similar privilege is granted to Owners prior redelivery provided not interfering with Charterers operation/cargo intake.

### Clause 44

Owners warrant the vessel is eligible and equipped to bunker in the USA, its territories and possessions and in all countries to which vessel is allowed to trade under this charter.

### Clause 45

The Owners are to provide and keep on board valid Deratisation Certificate throughout the charter period. Deratisation shall always be for Owners' account except for cargo.

### Clause 46

Throughout the period of the charter vessel to be in possession of all necessary valid equipment and certificates to comply with safety and health regulations, national and international regulations, and all current requirements at all ports of call, Panama and Suez Canals included.

### Clause 47

For the carriage of grain in bulk vessel to have on board throughout the charter period valid documents and certificates issued by the classifications society and/or national authority on the basis of the SOLAS 1974 Regulations and latest amendments thereto. The vessel is a fully grain fitted single deck/self trimming bulk carrier capable of loading and sailing with untrimmed ends in accordance with NCB and US/Canadian coastguard regulations.

### Clause 48

Vessel is suitable for grab discharge and no cargo to be loaded in places inaccessible to grabs or in deeptanks. Charterers to have the privilege of using rubber wheeled bulldozers in vessel's holds. However, unit weight of bulldozers will not exceed vessel's tanktop strengths and her operation always under Master's supervision and to his satisfaction.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28ᵀᴴ JUNE 2006

### Clause 49 – Cargo Claims/P & I Club

Owners guarantee that the vessel is entered and shall remain entered in a P & I Association which is a member of the Group of International P & I Clubs for the duration of this Charter Party. Entry shall include, but not be limited to, ordinary cover for cargo claims.

In the case of damage to and/or loss of cargo carried on the vessel in which Owners and/or Charterers' liability could be involved under the terms of this Charter Party, as the case may be, the Owners and/or the Charterers shall be asked to grant time extension for suit in each and every occurrence, which should not be unreasonably withheld. The so granted extensions shall not prejudice the ultimate responsibility of both parties. Liability for cargo claims, as between Owners and Charterers, shall be apportioned as specified by the Interclub New York Produce Exchange Agreement effective from 1996, and its subsequent amendments.
Owners P & I Club: The Swedish Club
Charterers: P & I Club:

### Oil Pollution

Owners guarantee to provide and maintain, during the entire Timecharter period, at their expense and carry on board the vessel, a valid US Certificate of Financial Responsibility. Owners also guarantee to have secured current certificates for other countries/federal states or municipal or other division or authority thereof, where guarantees are required. All such certificates to be valid throughout the entire Timecharter period.

The Charterers shall in no case be liable for any damages as a result of the Owners' failure to obtain the aforementioned certificates. Time lost by non-compliance to be considered as off hire and may be deducted from hire and Owners hold Charterers harmless against any directly related losses, damages or expenses.

### Clause 50

Deleted.

### Clause 51

In the event of outbreak of war between any of the following countries: USA, the country of vessel's flag, USSR, The People's Republic of China, Japan, Germany, both Charterers and Owners have the option of cancelling this Charter Party, provided no cargo on board.

It is understood that war means direct war between these nations and does not include hostilities or civil war where any of the above countries support opposing sides. Owners shall not unreasonably take advantage of this clause in case of a limited local conflict.

### Clause 52

The present annual war risk insurance premium on the vessel's hull and machinery including I.V. and LOH value are for Owners' account. War bonus to the Master, Officers and crew to be for Charterers' account. In case of trading to an area where additional premium on vessel's insurance policies is imposed then same to be for Charterers account.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

**Clause 53**

This charter is subject to the New Jason Clause, New Both-to-Blame Collision Clause, P & I Club Bunkering Clause, Conwartime 2003 Clause, General Paramount Clause as attached, which are to be incorporated in all Bills of Lading issued under this charter.


1993

All Bills of Lading issued under this charter will incorporate the General Paramount Clause as attached.

Any additional War Risk Premium actually charged by vessel's hull underwriters to be for Charterer's account, however, such amount not to exceed what would have been charged by Catlin Syndicate of Lloyd's of London.

**Clause 54 – Trading Limits**

World wide trading within institute warranty limits excluding Cuba, N.Korea, Albania, Cambodia, Angola, Turkish occupied Cyprus, Serbia, Montenegro, Bosnia-Herzegovina, Somalia, Nigeria allowed except P.Harcourt, Liberia, Zaire, Sudan, Eritrea, Sri Lanka except Colombo and Trincomalee, N.Caledonian, CIS Pacific ports and any ports affected by Asian gypsy moth, Belize, Honduras, North Yemen, Nicaragua, Haiti, Madagascar, Norway, Sweden, Finland, Denmark, Iceland, Hudson Bay, War or war like zones as defined by Bimco, and all the countries which are or may become during the currency of this Charter Party sanctioned by the United Nations.

**Clause 55 – Cargo Exclusions**

Charterers are to load, stow, trim, lash, secure, dunnage, tally and discharge cargo at their risk and expense in accordance with imo and other local regulations. The following cargoes are specifically excluded: arms, ammunition, asphalt, acids, asbestos, bombs, borax, borings, black powder, blasting caps, calcium carbide, calcium oxide, castor beans, creosoted goods, calcium, cement, hypochlorite, copra, copra products, cotton seeds, containers, dynamite, direct reduced iron, hbi, iron ore briquettes, explosives, sunflowerseeds expellers, ferro silicon, fish meal, hides, kaolin, livestock, motor spirit, motor blocks and turnings, military equipment, mobile homes, modular homes, nuclear substances, silicon manganise, naphtha, oilcakes, salt, any steel scrap but shredded scrap is specifically allowed, sulphur, pitch, petroleum and it' s products but petcoke is specifically allowed, refrigerated cargo, radio active substances, seedcakes, tar and it's products, talc, tnt, zinc ashes, any other cargo that is IMO described as dangerous/hazardous.

Ammonium nitrate appendix b ferts grade allowed except in hold no 4

Charterers' option to load following maximum number of below cargoes for the total period:

1/ two cargoes of hot briquete iron

2/ two cargoes of fishmeal

3/ two cargoes of bulk salt - lime wash clause to apply provided same is not last cargo

4/ one cargo of steel scrap hms 1÷2 non oily excl mbut - soft load clause to apply

5/ one cargo of clinker

6/ one cargo of sulphur

7/ one cargo of cement PROVIDED SAME IS NOT LAST CARGO

Clinker and sulphur allowed as last cargo with additional bonus of USD 4000.

For hbi and bulk fishmeal compensation to be lumpsum 10,000 and any expenses for special preparation of loading/carrying/discharging of cargo to be for Charterers risk/time/expenses..

ADDITIONAL CLAUSES TO M.V. "VERTIGO"

CHARTER PARTY DATED 28TH JUNE 2006

**Clause 56 – Redelivery Clause**
It is understood that Owners to give Charterers delivery notices as follows:
10/7/5/3/2/1 days notice. Delivery notices to be tendered by the Owners to be approximate.

Charterers to give Owners the following notices:
15 days approximate notice of redelivery date and port and 7/5/3 days definite notice.

**Clause 57**
A joint on-hire and off-hire survey including bunkers and condition is to be held. Time cost of these surveys to be equally shared between Owners and Charterers. The appointment of the surveyors is to be agreed jointly between Owners and Charterers.

**Clause 58**
Deleted

**Clause 59 – Cargo Holds**
Vessel to arrive at the first loading port and/or inspection place with all holds/cargo carrying compartments clean, watertight, dry, odourless, free of rust and/or rust scale, flaking paint, residues of previous cargo(es), and all other deleterious substances, and ready in all respects to the satisfaction of the surveyor to carry any permissible cargo under this Charter Party. If on presentation for loading at the first load port the vessel should fail to pass any of the above inspections the vessel is to be placed off-hire from time of rejection until the vessel passes inspection with all directly related expenses incurred as a result of the failure for Owners account.

**Clause 60**
Deleted

**Clause 61**
All references to time with regard to hire computation understood to be in GMT. Clause headings are inserted for convenience or reference only and shall be ignored in the interpretation of this Charter Party.

**Clause 62**
If required, Charterers to use their own Bills of Lading. With reference to lines 78/79 of the Charter Party, upon request to Owners and/or Master, the Charterers and/or their agents to be authorised by the Owners to sign on Owners' behalf all Bills of Lading as presented in accordance with Mate's and Tally Clerk's receipts without prejudice to this Charter Party, but the Charterers are to accept all consequences that might result from the Charterers and/or their agents not adhering to the remarks in Mate's and Tally Clerk's receipts. The Charterers have the right to discharge part of full cargo without presenting the Bills of Lading, against Charterers' Letter of Indemnity (in accordance with Owners' P & I Club wording) duly signed by the Charterers, submitted to the Master or Owners that the Owners, Owners' vessel, Owners' servants and agents are not to be responsible for any consequences resulting from such discharge. Any time lost due to problems occurred during such practice to be for Charterers' account.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28ᵀᴴ JUNE 2006

**Clause 63 – BIMCO Double Banking Clause**

(a) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the Vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the Vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d) The Owners shall be entitled to insure any deductible under the Vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the Vessel's Underwriters and/or the cost of insuring any deductible under the Vessel's hull policy.

(e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The Vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

**Clause 64**
Deleted

**Clause 65**
Owners agree to allow Charterers to perform hosetesting/watertight testing of hatches prior loading at first load port at Charterers' time and expenses. In case of failure to pass hose test inspection vessel to be placed off-hire from time of failure till hatch covers inspected and passed inspection.

**Clause 66 – Hold Cleaning**
Charterers have the option to redeliver the vessel without cleaning holds paying Owners lumpsum US$4,500.

Charterers' will remove from vessel's holds dunnage and lashing materials in their time and expense and place same on deck to Masters satisfaction provided same allowed by port and/or local authorities. If collection/disposal of dunnage/lashing compulsory then Charterers to dispose of dunnage at their time/expense.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

**Clause 67**

In the event that damage is caused to the vessel by any of Charterers servants including stevedores and crane operators, the Master is to notify Charterers or their agents as soon as possible after such damage is discovered, but latest within 24 hours or in the case of hidden damage, latest upon vessel's redelivery and where appropriate, arrange for a survey to be carried out to define and evaluate the damage in the presence of Charterers representatives, if available, unless the damage has in the meantime been repaired.

Damages affecting the vessel's seaworthiness and / or cargo worthiness and / or classification or the safety of the crew are to be repaired by the Charterers immediately upon occurrence in their time and at their expense including class surveyor's fees and vessel to remain on hire.

Damages which do not affect the vessel's seaworthiness, cargo worthiness, classification or the safety of the crew, are to be repaired by the Charterers prior to redelivery in their time and at their expense. Provided Owners agree, the estimated cost of, and estimated time required for repairs of such damage may be deferred to a time convenient to Owners against payment by the Charterers to the Owners on redelivery, of such amount as may be agreed by the parties in lieu of repairs of the damage before redelivery.

**Clause 68 – Letter Of Indemnity Clause**

Letter of Indemnity clause to be presented prior to commencement of discharge:
In the event to original Bill(s) of Lading are not available on vessel's arrival discharge port(s), Owners agree to allow entire cargo to be discharged without delay in return for Charterers signed single Letter of Indemnity in conformity with Owners P & I wording, without bank signature.

**Clause 69 – Owners' Option to Sell**

Owners' option to sell the vessel with the Timecharter attached subject to Charterers approval of new Owners, such approval not to be unreasonably withheld.

**Clause 70**

If the vessel's crew or vessel is caught smuggling narcotics into USA waters or ports, then this to be Owners' responsibility. If the Charterers' agents or servants are caught smuggling narcotics into USA waters or ports, then this to be the Charterers' responsibility.

**Clause 71**

Deleted.

**Clause 72 – Entertainment**

The Charterers to pay US$1,300 per month or pro rata for all victualling, entertainment and cable expenses.

**Clause 73**

Cargoes or compulsory or shore watchmen arranged/ordered by Charterers or their agents to be for Charterers' account. Otherwise to be for Owners' account.

**Clause 74**

Charterers' agents to handle ship's minor routine matters at cost without payment of fee by Owners, but Owners when necessary will appoint their own agents at port of call to attend to major Owners' matters.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

**Clause 75**
All taxes and/or dues on cargo, freight and/or charter hire to be for Charterers' account except tax and duties levied against the Owners in the country of domicile or ship's flag.

**Clause 76**
Owners warrant that the vessel has not traded Israel and is not blacklisted by Arab countries and that the vessel is eligible for bunkers in the United States of America, its territories and possessions in accordance with US Department of Commerce, Office International Trade, Directive No. 705.

**Clause 77**
Deleted.

**Clause 78**
Charterers to have the option of terminating this charter in the event of vessel remaining off hire for 30 days consecutively or more, and may redeliver the vessel to Owners at any port or anchorage within trading limits provided no cargo onboard. No liability whatsoever shall attach to Charterers in the event of their exercising their option to terminate this charter provided the off hire caused due to Owners'/vessel's fault.

**Clause 79 – Redelivery**
Redelivery on dropping last outward sea pilot one safe port Aden/Japan, however if PG then PMO or Skaw-Passero or Boston-Buenos Aires or full Euromed/Black Sea or Valparaiso-Vancouver range. Port in Charterers' option, any time day or night Sundays and holidays included.

**Clause 80 – Bimco ISM Clause**
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this charter party, the Owners shall procure that both the vessel and 'the company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this charter party, loss, damage, expense or delay caused by failure on the part of the Owners or 'the company' to comply with the ISM Code shall be for the Owners account.

**Clause 81 – Speed and consumption Clause**
Charterers are allowed to nominate an internationally recognised routing service to supply routes advice to the Master during voyages specified by the Charterers. The Master to comply with the routing procedures of the routing services. In the event of any dispute over apparent speed and consumption warranty, Owners/Charterers to appoint an agreed third party to investigate same and his decision shall be deemed final and binding and the appointment cost to be shared equally by Owners and Charterers. It is expressly understood that the speed and consumption given is applicable upto and including Beaufort 4.



## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

**Clause 82**
Charterers option to load cargo on deck only limited by deck/hatch strengths and vessel stability but always to comply with IMO regulations and to be to Master's satisfaction.
Master always to endeavour to maximise his deck cargo and co operate with Owners Port Captain.
Bills of Lading for deck cargo to be marked
'Carried on deck at Charterers / shippers risk and expense without responsibility to vessel and / or Owners for any damage and / or loss howsoever caused including negligence.'

For cargoes to and from the United States Bills of Lading for deck cargo to be marked as follows:
'Carried on deck at Charterers / shippers risk and expense as to perils inherent in such carriage but in all other respects subject to the provisions of the US Carriage of Goods by Sea Act 1936.'

**Clause 83 – Timecharter Period**
Time charter period of minimum 10 October 2006 / maximum 10th December 2006 via safe ports / safe berths / safe anchorages always afloat, except NAABSA as per Clause 6.always within Institute Warranty Limits.

**Clause 84**
Deleted.

**Clause 85**
Deleted.

**Clause 86**
No Liner/Through/Way Bills of Lading to be issued.

**Clause 87**
Vessel always to be left in seaworthy trim to Master's satisfaction.

**Clause 88 – U.S. Trade – Unique Bill of Lading Identifier Clause –**
The Charterers warrant that each transport document accompanying a shipment of cargo destined to a port of place in the United States of America shall have been endorsed with a Unique Bill of Lading Identifier as required by the U.S. Customs Regulations
(19 CRF Part 4 Section 4.7.A) including subsequent changes, amendments or modifications thereto, not later than the first port of call.

Non-compliance with the provisions of this Clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise
and be made against them. Furthermore, all time lost and all expenses incurred including fines as a result of the Charterers' breach of the provisions of this Clause shall be for the Charterers' account.

**Clause 89**
Owners option to take redelivery of the vessel when and where ready at last discharge dock or anchorage in which case Owners and Charterers to share on a 50/50 basis all saved costs by not taking vessel to last outer pilot including but not limited to hire / tugs / pilots / bunkers etc.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

### CHARTER PARTY DATED 28TH JUNE 2006

#### Clause 90
In case vessel sails in the approaches of Greek islands / coast Owners to have the right to call at any Greek port for operational purposes and accordingly deviation / delay / bunkers / expenses to be for Owners account and always subject to Charterers prior approval.

#### Clause 91
Owners option to carry out a quantity and quality bunker survey each time bunker supply to vessel takes place and expenses of same to be split on a 50/50 basis.

#### Clause 92
Deleted

#### Clause 93
Vessel to be left in seaworthy trim and stability to Master's satisfaction for shifting between berths / ports / wharfs / anchorages.

#### Clause 94
General or USA Clause Paramount as applicable / Both to Blame Collision Clause / New Jason Clause / Conwartime 1993 to form part of this Charter Party and any Bills of Lading issued hereunder.

#### Clause 95
Bimco Hamburg Rules, US Security, AMS Clauses are hereby incorporated in this Charter Party.

#### Clause 96 – Owners Additional Clauses
AA) Charterers option to break IWL against paying additional premium but after getting permission from Owners which will not be unreasonably withheld.

BB) Intermediate hold cleaning to be carried out by the crew as if it was under Owners own operation. US$500 per hold. Owners not to be responsible for acceptance of the vessel and always subject to local authorities permission.

CC) Deleted.

DD) Charterers have the option to arrange for sufficient cement feeder holes in vessel's hatchways in their time and at their expense, and this work always to be done to Class Surveyor's approval.

EE) Charterers' Equipment: The Master is to keep a record of all Charterers' gear, equipment, dunnage and/or stores supplied to the vessel and to maintain same in good condition. Such gear, equipment, dunnage and/or stores to be returned to Charterers prior to redelivery of vessel to Owners, or if requested by Charterers at any time during the period of the charter, in like good order and condition as supplied (fair wear and tear excepted).

FF) Vessel not to be sub-chartered to companies based or associated with or having a connection with Cuba and / or Israel.

GG) Owners confirm she is fully fitted loggers with fixed and collapsible steel stanchions and has full lashings equipment as per lashing manual on board. (Same was drafted by ship builders and is in compliance with IMO requirements).

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28TH JUNE 2006

HH) Deleted.

II) Deleted.

JJ) Deleted.

KK) Deleted.

LL) Deleted.

MM) Deleted.

NN) Deleted.

**Clause 97**
During the currency of this charter party Owners not to be responsible if vessel's bottom is fouled due to prolonged stay of more than 45 days at a port/anchorage and therefore vessel's speed is reduced and/or consumption increased. In case of need for underwater cleaning same to be for Charterers' account in terms of time and expenses.

**Clause 98**
California block stowage is allowed from Brazil to USA and Coastal USA.

**Clause 99**
Fuel and diesel oil properties always to conform with latest ISO 8217:1996 and any subsequent revision thereof grade RME 25 and grade DMA respectively, of maximum sulphur content to ensure vessel's compliance with emission requirements in the areas of trade.

The fuel oil and or diesel oil to be timely supplied and of sufficient and suitable quantity and quality respectively for the vessel to comply with:

(a)The MARPOL Annex.VI requirements when the vessel is trading in the areas where same are applicable (SECAs) and from the dates same become effective for each different SECA,

(b) The EU Sulphur Directive already effective,
(c)California Air Resources Board rules, as and when effective for ocean-going vessels within California waters.

The vessel's owners not to be liable for any delays, fines, costs and expenses of whatsoever nature (direct or consequential) if caused from the vessel's non-compliance with the above mentioned emission requirements because of the charterer's unsuitable bunker supply (in terms of timing/quantity/quality).

**Clause 100**
Bimco ISPS, U.S. Trade unique identifier, U.S. Tax Reform 1986,Oil pollution, Ams clauses are hereby incorporated in this charter-party.

**Clause 101**
In the event that multiple b/l are issued, Owners/vessel are only responsible for delivering the total quantity of cargo loaded and Owners/vessel are not responsible for the distribution of the cargo to each individual receiver.

## ADDITIONAL CLAUSES TO M.V. "VERTIGO"

## CHARTER PARTY DATED 28ᵀᴴ JUNE 2006

**Clause 102**
Drydocking in case of emergency is always allowed.

**Clause 103 - Bulk Cement Loading**
1) Charterers undertake to use holds as less as possible, provided vessel's stability/trim and stress permit.

2) Such cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO and/or any other local regulations/rules applicable to such cargo.

3) Charterers to contribute USD 500 lumpsum towards the supply and laying of tarpulin/plastic sheet to cover deck area for cement dust should the Master so request and provided always permitted to do so by the local regulations and longshoremen/stevedores.

4) Discharge will only be effected by siwertell or kovaco or carlsen system (similar to sirwertell - screw with suction discharge).


**OWNERS**                                    **CHARTERERS**



***************

**Katrine Knobel**

| | |
|---|---|
| From: | Chartering |
| Sent: | 13. oktober 2006 11:48 |
| To: | Recipient |
| Subject: | Fw: CPFN VERTIGO/PANCOAST ** MSG#:<889166> |

FROM: <"Chartering@westernbulk.com - www.westernbulk.com">
DATE: 13-OCT-2006 11:47
MSG.: 2251100

Phone +47 2313 3400  Fax +47 2308 3738  Tlx +56 72138

katrine/cvc
cc: mac
cc: ops
cc: steel

  pls note the mv vertigo extended to pancoast as below. pls file and pls note.


> ======= Forwarded Message ======= <

> DATE : 12-Oct-2006 19:41
> REF: 889166
> Century Chartering (U.K.)Ltd
>
> HERE IS CENTURY
>
> CRISTIAN / DAVID
>
> MV VERTIGO / PANCOAST
>
> CONFIRM WE HAVE FULLY FIXED THE EXTENSION TO THE C/P ASF ADDENDUM
> DATED
> 12/10/06
>
> MV VERTIGO AS PER PRESENT CP
> DELY IN DIRECT CONTINUATION OF PRESENT CHARTER NEW HIRE/PERIOD TO
> START 10 DEC 2006 FOR A PERIOD OF MIN 20 MAY / MAX 1ST JULY 2007 HIRE
> USD 16250 PDPR
>
> DIRTY CARGO OPTIONS FOR THE PERIOD FROM 10 DEC TO READ ASF charterers'
> option to load following maximum number of below cargoes  for the
> total period:
>
>  1/ two cgoes of hot briquete iron
>  2/ two cgoes of fishmeal
>  3/ two cgoes of bulk salt - lime wash cls to apply provided same is
> not last cgo  4/ one cargo of steel scrap hns 1+2 non oily excl mbnt
>  - soft load cls to apply
>  5/ one cargo of clinker
>  6/ one cargo of
>  sulphur
>  7/ one cargo of cement per first and optional period,  PROVIDED SAME
> IS NOT LAST CARGO
>
>  clinker and sulphur allowed as last cgo with additional bonus of usd 4000.
>
>  For hbi and bulk fishmeal compensation to be lumpsum 10,000 and any
> expenses for special preparation of loading/carrying/discharging of
> cargo to be for charts risk/time/expenses.
>
> OWISE ASPER PRESENT CP VERTIGO/PANCOAST
>
> rgds
>

1

```
>
>
> ------------------------------------------------------------------------
> -------*
> Century Chartering(UK) Ltd 79 Cannon Street 12th Floor London EC4N 6HH
> Tele: +44(0)2072833443 Fax: +44(0)2072833663 Sent via Danaos Info@Gate
> Communication Software
>
>
>
> Scanned by the MessageLabs Email Security System.
>
>
```

2